Johnson, J.,
concurring in part, dissenting in part: I generally agree with tire majority’s holdings except for its refusal to affirm and enforce the district court panel’s remedy. The panel did exactly what we instructed it to do. The remedy it fashioned was timely, not “premature.” Consequently, this court should not have issued a stay on June 30, 2015, and we should not refuse to enforce the panel’s orders now.
This case required a panel of three district court judges—either active or retired—because of the enactment of K.S.A. 72-64b03 in 2005. L. 2005, ch. 194, sec. 22. The provision is specifically and solely applicable when “a petition is filed in a district court of this state alleging a violation of article 6 of tire Kansas constitution,” i.e., a school finance case. K.S.A. 2015 Supp. 72-64b03(a). We need not speculate as to whether the timing of the enactment had anydring to do with prior school finance rulings because the Kansas Attorney General at that time specifically mentioned Montoy while testifying in favor of the bill. The attorney general opined that a three-judge panel would be “more contemplative and more representative in *747 its interpretation of the Constitution.” Minutes of Senate Judiciary Committee hearing on Senate Bill 181, February 17, 2005.
The panel in this case can certainly be characterized as “representative” of the district court bench in this state. The citizens of the 15th Judicial District in far northwest Kansas elected Judge Jack L. Burr to be their district judge for over 30 years, until his retirement in 2009, at which point he assumed senior judge responsibilities. Judge Robert J. Fleming is a long-serving district judge in the 11th Judicial District in the far southeast corner of our State and has volunteered to serve the Judicial Branch in many capacities, including the Kansas Commission on Judicial Qualifications. Judge Franklin R. Theis, currently the state’s longest-serving district judge, is in his fourth decade on the Shawnee County bench—the Third Judicial District-—-and has presided over many complex and high-profile cases. I submit that the Chief Judge of the Kansas Court of Appeals, who appointed the panel pursuant to K.S.A. 2015 Supp. 72-64b03(b), could not have assembled a “more contemplative and [] representative” group.
The attorney generals office also testified before the House Select Committee on School Finance in 2005, urging the adoption of the unique procedure for school finance cases. An assistant attorney general rationalized that “[t]he anticipated positive impacts of [the] proposed change in [the] law would be to aid in both the thoroughness and objectivity in the handling of the case at the district court level, while also expediting the appeal process of these important cases should an appeal be taken.” Minutes of the House Select Committee on School Finance on Senate Bill No. 181, March 14, 2005, Attachment 2-1.
Interestingly, not everyone was convinced of the altruistic motive behind the legislation. Kathy Cook, Executive Director of the Kansas Families United for Public Education, told the committee that the “bill is not about judicial scrutiny, . . . not about fairness, . . . not about insuring students and parents’ rights under the Constitution, because it only impedes the process.” Minutes of the House Select Committee on School Finance on Senate Bill No. 181, March 14,2005, Attachment 1. Ironically, the current attorney *748 general now urges this court to accord no deference to the system for which his predecessor successfully lobbied.
Nevertheless, the new procedure for school finance cases has been dutifully followed at all levels of the Judicial Branch. This court fully embraced the procedure in Gannon I when we remanded the equity component of this action with instructions for the panel to “enforce these affirmed equity rulings.” (Emphasis added.) Gannon v. State, 298 Kan. 1107, 1198, 319 P.3d 1196 (2014). Specifically, we said that, if the legislature attempts to cure the inequities in the system by some means other than fully funding the previously existing provisions, then the panel was to assess the attempted cure through the lens of our articulated test.
But we did not merely ask the panel to provide a declaratory judgment on the legislature’s compliance with our equity rulings, so that we could later fashion our own enforcement remedy. We specifically instructed the panel to remedy the inequities. With respect to the capital outlay provision, we directed: “If the legislative cure fails this test, the panel should enjoin its operation and enter such orders as the panel deems appropriate.” 298 Kan. at 1198. With respect to the local option budget and supplemental general state aid, we directed: “If the panel then determines those inequities are not cured, it should enjoin operation of the local option budget funding mechanism, K.S.A. 2013 Supp. 72-6433 and 72-6434, or enter such other orders as it deems appropriate.” 298 Kan. at 1199.
And the panel followed our instructions to the letter. It thoroughly analyzed each provision of the legislature’s proposed “fix”; objectively determined which portions could be constitutionally salvaged and which ones needed to be deleted or modified to preserve the constitutional integrity of the enactment; and “enter[ed] such orders as the panel deem[ed] appropriate.” 298 Kan. at 1198. In other words, the panel used its discretionary powers to enforce our equity rulings, as we told it to do. Moreover, &ere is precedent to support the remedy it fashioned. See, e.g., DeRolph v. State, 93 Ohio St. 3d 309, 754 N.E.2d 1184 (2001) (modifying remedial legislation enacted following the court’s holding that the state’s school financing scheme violated the Ohio Constitution’s education clause *749 and ordering the state to implement the court s changes and fully fund them by a date certain); State v. Campbell County School Dist., 2001 WY 90, ¶¶ 17-20, 32 P.3d 325 (2001) (ordering specific amount of funding for school district capital construction projects to cure constitutional violations); cf. Montoy v. State, 279 Kan. 817, 844-45, 112 P.3d 923 (2005) (in response to State’s request for a year delay to conduct additional cost study, court ordered added funding of $285 million, which was one-third of estimated funding to achieve constitutional compliance).
If a reasonable person could agree with the trial court s exercise of discretion, “[i]t matters not a whit whether an appellate jurist might have made a different decision.” State v. Moyer, 302 Kan. 892, 903, 360 P.3d 384 (2015). In that vein, the majority should not substitute its own preferred remedy for that ordered by the panel.
In short, I would affirm the panels rulings on the equity portion of this lawsuit, with such supplementation as may be necessary for fiscal years 2016 and 2017.